IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARY NEALY,<br><br>      Plaintiff,<br><br>      v.<br><br>SUNTRUST BANKS, INC. and<br>SUNTRUST BANK,<br><br>      Defendants. | Civil Action No.<br>1:19-cv-02885-SDG |

**OPINION AND ORDER**

This matter is before the Court on the Final Report and Recommendation (R&R) of United States Magistrate Judge Linda T. Walker [ECF 58], which recommends that the separate motions for summary judgment filed by Defendants SunTrust Banks, Inc. and SunTrust Bank (collectively, SunTrust) [ECF 42; ECF 43] be granted.[1] On November 30, 2020, Plaintiff Mary Nealy timely filed her objections to the R&R [ECF 62]. After careful consideration of the record, Nealy's objections are **OVERRULED**. The R&R is **ADOPTED** in its entirety.

---

[1]   Although filed separately, the motions for summary judgment are identical. Thus, the Court will consider them collectively for the purposes of this Order.

I.     BACKGROUND

The Court incorporates by reference the thorough recitation of the facts, procedural history, and legal standard for resolving a motion for summary judgment as set forth in the R&R. For purposes of this Order, the Court provides the following brief summary of the pertinent facts.

Nealy worked in SunTrust's Atlanta, Georgia office as a Processing Specialist in its Consumer Lending Sales Center (CLSC).[2] She directly reported to David Lind—the underwriting supervisor—who directly reported to Sharon Clark—the manager of the Atlanta CLSC office—who directly reported to Donna Reed, the CLSC manager responsible for both the Atlanta and Orlando offices.[3] To perform their tasks, CLSC teammates use a system referred to as ACAPS, which is an underwriting system and application of record for consumer lending applications that contains client information and real estate data.[4]

In December 2018, Latonette Diljohn—a CLSC employee—requested permission to work a second job as a realtor.[5] Diljohn's managers discussed the

---

[2]   ECF 43-2, ¶¶ 1, 3, 6; ECF 47-2, ¶¶ 1, 3, 6. SunTrust has CLSC offices in Atlanta and Orlando, Florida. *Id*.

[3]   ECF 43-2, ¶¶ 7–9; ECF 47-2, ¶¶ 7–9.

[4]   ECF 43-2, ¶¶ 4–5; ECF 47-2, ¶¶ 4–5.

[5]   ECF 43-2, ¶ 11; ECF 47-2, ¶ 11.

request with Reed, who was not aware of any similar requests or other CLSC teammates who were licensed realtors.[6] Due to concerns over potential conflicts of interest, Reed decided to prohibit CLSC teammates with access to ACAPS from maintaining active real estate licenses.[7] Reed consulted with her manager and a Human Relations (HR) partner before taking action; the latter agreed the situation posed a conflict of interest.[8] Reed asked her subordinate managers to determine if any other CLSC teammates with ACAPS access maintained active real estate licenses and, if so, to inform those teammates that they would be required to deactivate their licenses.[9] Reed set the end of January 2019 as the deadline for those employees to do so.[10]

At that time, three CLSC teammates in the Atlanta office had active real estate licenses: Nealy, Shara Sims, and Shelly Miles.[11] As the January deadline approached, Nealy requested a one-week extension to consider deactivating her

---

[6]   ECF 43-2, ¶¶ 13–15; ECF 47-2, ¶¶ 13–15.

[7]   ECF 43-2, ¶ 21; ECF 47-2, ¶ 21.

[8]   ECF 43-2, ¶ 22; ECF 47-2, ¶ 22; ECF 47-8, at 47–49.

[9]   ECF 43-2, ¶ 24; ECF 47-2, ¶ 24.

[10]  ECF 47-14.

[11]  ECF 42-2, ¶ 28.

license, which Reed approved.[12] At the end of the extension, Nealy informed Lind that she would neither deactivate her license nor resign from SunTrust.[13] Reed then instructed Nealy's managers to consult with HR and terminate Nealy's employment.[14] Her employment was terminated on February 19, 2019.[15]

## II.   LEGAL STANDARD

A district judge has a duty to conduct a "careful and complete" review of an R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982). The Court reviews any portion of an R&R that is the subject of a proper objection on a *de novo* basis. 28 U.S.C. § 636(b)(1). The party challenging an R&R must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). In contrast, the Court need only review those portions of an R&R to which no objection is made for clear

---

[12]   ECF 43-2, ¶ 29; ECF 47-2, ¶ 29.

[13]   ECF 43-2, ¶ 30; ECF 47-2, ¶ 30.

[14]   ECF 43-2, ¶ 31.

[15]   *Id.* ¶ 32.

error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). After conducting this review, the Court retains broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. 28 U.S.C. § 636(b)(1); *Williams v. McNeil*, 557 F.3d 1287, 1290–92 (11th Cir. 2009).

### III.   DISCUSSION

#### a.   Nealy's Causes of Action

Nealy alleges six substantive claims against SunTrust for (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII) (Count I); (2) race discrimination premised on a mixed-motive theory under Title VII (Count II); (3) race discrimination in violation of 42 U.S.C. § 1981 (Count III); (4) race discrimination premised on a mixed-motive theory under 42 U.S.C. § 1981 (Count IV); (5) age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (ADEA) (Count V); and (6) gender discrimination in violation of Title VII (Count VI).[16] SunTrust moves for summary judgment on each claim, which the R&R recommends the Court grant in full.

---

[16]   ECF 6.

Specifically with regard to Nealy's claims under Counts I, II, III, and VI,[17] the R&R found that she did not establish a *prima facie* case of discrimination because she (1) failed to point to a similarly situated comparator to support her claims of intentional discrimination, and (2) did not otherwise present evidence demonstrating racial animus. Nealy raises six objections to various portions of the R&R's conclusion about these claims. The R&R additionally recommends that the Court enter summary judgment on Nealy's mixed-motive claim under § 1981 (Count IV) because it is not viable as a matter of law under that statute. *Mabra v. United Food & Com. Workers Local Union No. 1996*, 176 F.3d 1357, 1358 (11th Cir. 1999). The R&R also recommends that the Court grant SunTrust's motion for summary judgment on Nealy's ADEA claim (Count V) because she did not offer any opposition to that portion of SunTrust's motion. Nealy did not object to the recommendations concerning Counts IV and V. After a review of the R&R, the Court finds no clear error; SunTrust is entitled to summary judgment on those claims.

---

[17] As noted by the R&R, although Nealy asserts an independent claim for gender discrimination (Count VI), she did not point to specific evidence demonstrating any alleged animus based on gender or sex in her response in opposition to SunTrust's motions for summary judgment [ECF 58, at 14 n.6]. Nonetheless, like the R&R, the Court addresses Nealy's race and gender discrimination claims in tandem.

### b. Applicable Legal Standards

Nealy's intentional race and gender discrimination claims under Title VII and § 1981 involve identical legal analysis and are discussed together. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). To establish such a claim, "a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Id*. If a plaintiff relies on circumstantial evidence—such as Nealy in this case—she must "navigat[e] the now-familiar three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1217 (11th Cir. 2019). Under this framework:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing *McDonell Douglas*, 411 U.S. at 802–03).

Nealy's mixed-motive theory under Title VII (Count II) must be considered separately. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 n.4 (11th Cir. 2016). A plaintiff asserting a mixed-motive claim must show that illegal bias "was a motivating factor for an adverse employment action, even though other factors also motivated the action." *Id.* (quoting 42 U.S.C. §2000e–2(m)). A plaintiff must submit "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action." *Id.* ("In other words, the court must determine whether the plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her protected characteristic was a motivating factor for an adverse employment decision.") (brackets omitted).

### c.    Nealy's Objections

#### *i.*    **Objection #1: Similarly situated comparators**

Nealy objects to the R&R's finding that her proffered comparators are not similarly situated. To make out a *prima facie* case of intentional discrimination under the *McDonell Douglas* framework, a plaintiff must show that he or she "was treated less favorably than similarly situated employees outside her protected class." *Lewis*, 918 F.3d at 1221. To be similarly situated, a plaintiff and her alleged

comparators must be "similarly situated in all material respects." *Id.* at 1218. As recently summarized by the Eleventh Circuit:

> Although this standard requires a case-by-case analysis and formal labels regarding job title are unnecessary, a similarly situated comparator will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment history.

*Earle v. Birmingham Bd. of Educ.*, __ F. App'x __, No. 20-10763, slip op. at *2 (11th Cir. Jan. 19, 2021). *See also Lewis*, 918 F.3d at 1227–28 ("[A] similarly situated comparator . . . will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff.").

Nealy points to six alleged comparators. The R&R found these comparators to not be similarly situated in all material respects because none of them (1) worked in the CLSC, or (2) were supervised by Reed. For the second point, the R&R relied on Nealy's cited cases and found that the key inquiry is not whether the comparators had "the same 'immediate' or 'direct' supervisor *per se*," but whether "her comparators were subject to the authority of the same ultimate

decision maker."[18] In her objection, Nealy argues the identified comparators are similarly situated because (1) some had access to ACAPS or other confidential information, and (2) under agency principles, the actions of two separate supervisors may be attributable to the same employer, *i.e.*, SunTrust.

After a *de novo* review of the record, the Court finds Nealy's objection lacks merit and agrees with the conclusions in the R&R. First, Nealy does not address the R&R's finding that her alleged comparators are not similarly situated because none of them worked in the CLSC. Whether the comparators had access to other confidential information or a hypothetical conflict of interest is irrelevant; none shared Nealy's job duties or were under the same obligations.

Second, Nealy's reliance on an agency theory likewise misses the mark. At the outset, Nealy did not present this argument to the magistrate judge and raises it for the first time in her objection. Thus, the Court has the discretion to not consider it at this juncture. *Williams*, 557 F.3d at 1292. *See also Worley v. City of Lilburn*, 408 F. App'x 248, 253 (11th Cir. 2011). Nonetheless, considering the merits, the Court is not persuaded. Nealy does not argue that any of her purported comparators were supervised by, or under the final decision-making authority of,

---

[18] ECF 58, at 20 (citing *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005); *Blackshear v. City of Wilmington*, 15 F. Supp. 2d 417, 423–25 (D. Del. 1998)).

Reed. And neither does Nealy attempt to show how the different supervisors maintained a common management style. The Eleventh Circuit is clear that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Hester v. Univ. of Ala. Birmingham Hosp.*, 798 F. App'x 453, 457 (11th Cir. 2020); *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001) ("[D]ifferences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination."). What is more, Nealy cites no case to support her agency theory in this context.[19] If adopted, such a theory would ostensibly render any supervisory action against any employee attributable to the employer such that all employees have the same "supervisor" for purposes of satisfying the first prong of the *McDonnell Douglas* framework. This is directly contrary to binding Eleventh Circuit precedent. Therefore, Nealy's objection is overruled.

    *ii.* **Objection #2: SunTrust's duty to investigate comparators' alleged conflicts of interest**

Nealy objects to the R&R, claiming it erred by "holding SunTrust can ignore whether the Comparators having real estate licenses and access to confidential

---

[19] Nealy cites only to *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998), a sexual harassment decision with no bearing on the issues presented in this case.

information is a conflict of interest."[20] In her response in opposition to SunTrust's motions for summary judgment, Nealy argued that "[t]he Comparators not having the same supervisor is irrelevant" because SunTrust's Code of Business Conduct and Ethics (CBCE) states that employees "must speak up when they become aware of significant risks to SunTrust . . . regardless of their supervisor or department."[21] According to Nealy, each supervisor "had a duty to investigate whether the Comparators had the *potential* to violate the [Real Estate Settlement Procedures Act]."[22] In her objection, Nealy also points to a post-termination letter she sent to SunTrust outlining her belief that her "race, gender, and age" were the underlying motivation for her termination and asking SunTrust to conduct an investigation. At bottom, the gravamen of Nealy's objection is her belief that SunTrust conducted an inadequate investigation because other employees not in her group were permitted to maintain both their employment and active real estate licenses.

    Nealy's objection is misplaced. Contrary to her characterization, the R&R did not hold that SunTrust may ignore or otherwise fail to investigate a conflict of interest. Rather, the R&R thoroughly examined the CBCE and found that "an

---

[20]   ECF 62, at 11.

[21]   ECF 47-1, at 5.

[22]   *Id.* at 6.

employee's supervisor is material to the comparator analysis" because, for instance, the CBCE "call[s] upon [SunTrust's managers] to exercise their discretion in deciding if an action is a conflict of interest."[23] And as the R&R correctly found, other SunTrust employees were permitted to retain active real estate licenses because they worked in different groups and were subject to different obligations than Nealy. What is more, Nealy's objection does nothing to negate the fact that the Eleventh Circuit has squarely held that a "similarly situated comparator will ordinarily . . . have been under the jurisdiction of the same supervisor as the plaintiff." *Lewis*, 918 F.3d at 1227–28. In sum, the Court finds Nealy's objection to be without merit; therefore, it is overruled.

### iii. Objection #3: Reed's decision that having an active real estate license is a conflict of interest

Nealy objects to the R&R's finding regarding Reed's decision that having an active real estate license presents a conflict of interest for CLSC employees with access to ACAPS. In her response in opposition to summary judgment, Nealy argued that a reasonable jury could reject Reed's rationale for her decision and instead consider it evidence of racial or gender animus. The R&R rejected this argument:

---

23   ECF 58, at 18–19.

> Plaintiff's argument on this point boils down to whether having an active real estate license created the "potential for a conflict of interest," which would not be the basis for denying outside employment, or whether it created an "appearance of a conflict," which was to be "avoided" under SunTrust's policy. Indeed, Plaintiff spends the next several pages of her brief arguing over whether Ms. Reed honestly believed "a real estate broker could help a person get a second mortgage for a home" and "could receive a referral fee from a mortgage lender or broker."
>
> Unfortunately for Plaintiff, the Court is not "a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)). Ms. Reed might have been right in believing that having an active real estate license "is a conflict of interest," or she might have been wrong. Either way, Plaintiff cannot succeed by showing "merely that the defendant's employment decisions were mistaken." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). The Court's "inquiry is limited to whether the employer gave an honest explanation of its behavior," no matter how mistaken a manager was in her beliefs. *Elrod*, 939 F.2d at 1470 (quoting *Mechnig*, 864 F.2d at 1365).[24]

In her objection, Nealy essentially reiterates the same argument; *i.e.*, a reasonable juror could reject Reed's proffered reason for making her decision and find Nealy's termination was actually motivated by racial or gender animus.

---

[24] ECF 58, at 23–24 (internal citations omitted).

Nealy further speculates as to what Reed should have known regarding real estate brokers based on her previous experience.

After a *de novo* review of the record, the Court agrees with the R&R. At the outset, Nealy's objection appears more directed at a pretext argument; *i.e.*, the third step in the *McDonell Douglas* framework. Nealy does not cogently articulate how Reed's decision—even if completely incorrect—constitutes evidence of discrimination sufficient to make out a *prima facie* case and satisfy the first prong of *McDonell Douglas*. In any event, Nealy does not address any of the binding authorities cited by the R&R. She is simply challenging the reasonableness of Reed's decision without providing any link to how Reed allegedly discriminated against her based on race. The Eleventh Circuit has squarely held that this is not sufficient to defeat summary judgment. *E.g.*, *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class."); *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."). *See also Johnson v. Miami-Dade Cnty.*,

948 F.3d 1318, 1329 (11th Cir. 2020) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Therefore, Nealy's objection is overruled.

### iv. Objection #4: Spoliation

Nealy objects to the R&R's failure to apply spoliation law against SunTrust, arguing Reed lacked an honest or mistaken belief that Nealy had to deactivate her real estate license due to a conflict of interest. Specifically, according to Nealy, a reasonable jury could find that Reed should have known better because she has previously taken several courses related to mortgage fraud and the Home Mortgage Disclosure Act. The R&R rejected this argument, stating that Nealy "provides no evidence regarding what was actually taught during those courses, and [her] pure conjecture regarding what [Reed] might have learned is not sufficient to create a genuine issue of fact."[25] In her objection, Nealy contends she requested this evidence during discovery—which was allegedly not disclosed—thus necessitating a spoliation ruling and negative inference from this Court.

---

25    ECF 58.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011) (citing *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009)). The party seeking spoliation sanctions "must prove that (1) the missing evidence existed at one time; (2) [the spoliating party] had a duty to preserve the evidence; and (3) the evidence was crucial to [the movant] being able to prove [her] *prima facie* case." *Id*. Even if a party satisfies all three elements, sanctions or a negative inference are only warranted if "the absence of that evidence is predicated on bad faith, such as where a party purposely loses or destroys relevant evidence." *Id*.

Nealy did not present her spoliation argument for consideration by the magistrate judge. In fact, Nealy has never previously raised this issue or filed a motion for discovery sanctions. What is more, she has not pointed to evidence establishing any of the necessary elements. Nealy raises the point for the first time in her objection and asks the Court to apply a negative inference premised solely on her subjective speculation. Given these failures, the Court declines to consider her spoliation argument. *Williams*, 557 F.3d at 1292. *See also Worley*, 408 F. App'x at 253. Nealy's objection is overruled.

> *v.* **Objection #5: Whether Reed's declaration offers a post hoc justification for her decision.**

Nealy objects to the R&R, arguing it permitted Reed to submit a declaration that contradicts her deposition testimony, thereby rendering a post hoc justification for her actions. Nealy made the same argument in her response in opposition to SunTrust's motion for summary judgment; the R&R expressly rejected it. Specifically, the R&R summarized Reed's stated reason in her deposition for requiring Nealy to deactivate her real estate license: "that a teammate could use SunTrust Bank's information 'for their own personal gain' by 'giv[ing] the name of a client . . . to the real estate broker."[26] The R&R then compared this rationale with Reed's later-filed declaration that Nealy could potentially profit by obtaining a referral fee.[27] The R&R found Reed's deposition testimony not fundamentally inconsistent with her declaration; simply because "Reed did not explicitly use the phrase 'referral fee' . . . does not mean she has now offered a post hoc justification for her decision."[28]

After a *de novo* review of the record, the Court agrees with the R&R. As with many of her previous objections, Nealy's argument goes to *pretext*, not to

---

[26] ECF 58, at 26 (citing ECF 47-14).

[27] *Id.*

[28] *Id.*

establishing a *prima facie* case of discrimination. Nonetheless, the Court does not agree that Reed's declaration is fundamentally inconsistent with her deposition. *See Phillips v. Aaron Rents, Inc.*, 262 F. App'x 202, 210 (11th Cir. 2008) ("If an employer offers different reasons for terminating an employee, those reasons must be fundamentally inconsistent in order to constitute evidence of pretext."). And even if it were, the Court does not believe this would create a genuine issue of material fact sufficient to prevent summary judgment. Nealy's objection is overruled.

### vi. Objection #6: Nealy's mixed motive claim

Nealy objects to the R&R's finding that "[n]o reasonable jury could find that [her] race/gender was a motivating factor for the . . . adverse employment action, and thus [Nealy] cannot succeed even under the lesser causation standard needed to prove a mixed-motive theory."[29] In her objection, Nealy simply "incorporates her arguments stated above" without providing further analysis, evidence, or justification. As already stated, the Court finds none of Nealy's prior objections meritorious. Therefore, this objection is likewise overruled.

## IV. CONCLUSION

Nealy's objections [ECF 62] are **OVERRULED**. The Court also notes that it

---

29   ECF 27, at 58 (internal punctuation omitted).

has reviewed all other portions of the R&R to which Nealy had not timely objected and found no clear error. The R&R [ECF 58] is **ADOPTED** in its entirety as the Order of this Court. SunTrust's motions for summary judgment [ECF 42; ECF 43] are **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of SunTrust and close the case.

    **SO ORDERED** this the 23rd day of March 2021.

                                                 Steven D. Grimberg
                                United States District Court Judge